UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| Omni Logistics, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Daniel Wells,<br><br>    Defendants. | Case No. 1:25-cv-00023<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Plaintiff Omni Logistics, LLC ("Plaintiff" or "Omni") hereby files its First Amended Complaint against Defendant Daniel Wells ("Defendant" or "Wells"), and respectfully alleges the following facts and causes of action.

## I. INTRODUCTION

1. This is an action seeking to recover damages caused by Wells' misappropriation of Omni's trade secrets and confidential and proprietary information; unlawful competition with Omni; unlawful solicitation of Omni's customers and employees; and breach of fiduciary duties owed to Omni.

## II. PARTIES

2. Omni is a Delaware limited liability company with its principal place of business at 3200 Olympus Blvd., Suite 300, Dallas, Texas 75019. Plaintiff may be served with any notice or pleading in this action through its undersigned attorneys of record.

3. Defendant Daniel Wells is an individual domiciled in the State of North Carolina, residing at 418 Burdock Lane, Arden, NC 28704. Wells may be served with process at that address.

1

### III. JURISDICTION AND VENUE

4. This Court has federal question jurisdiction, 28 U.S.C. § 1331, due to Defendant's violations of the Defend Trade Secrets Act, 18 U.S.C. §§ 1832 & 1836(b)(1). The Court also has supplemental jurisdiction under 28 U.S.C. §1367 over Omni's remaining claims.

5. This Court has general personal jurisdiction over Wells because he resides in, is a citizen of, and is domiciled in the state of North Carolina.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1) because Wells is the sole defendant and he resides in this district.

### IV. GENERAL ALLEGATIONS

*A.  Omni's Business*

7. Omni is a third-party logistics company providing multi-modal transportation, freight forwarding, customs brokerage, warehousing, distribution, and other value-added logistics services with offices in North America, South America, Asia, and Europe.

8. As part of Omni's efforts to grow its business and expand its presence and customer base, in August 2021, Omni entered into an Equity Purchase Agreement whereby Omni acquired substantially all of the assets of Millhouse Logistics, Inc. and certain affiliated entities, including business goodwill, trade secrets, and confidential and proprietary information (the "Transaction"). Following the Transaction, Omni was a parent company to the newly organized companies, Millhouse Logistics Service, LLC and Millhouse Express Services, LLC (collectively, "Millhouse") with offices in Fletcher, North Carolina.

*B.  Wells Agreed to Restrictive Covenants As Part of the Transaction*

9. As a key employee, Wells received separate consideration in connection with the Transaction. Specifically, he received a transaction bonus and the right to receive a portion of the earn-out consideration.

10. In exchange for a significant financial windfall offered to Wells as part of the Transaction, Omni required that he enter into a Restrictive Covenant Agreement, which Wells acknowledged, agreed to, and signed on August 19, 2021 when the Transaction closed (the "Closing Date").[1]

11. The Restrictive Covenant Agreement provides that "to protect adequately the interests of [Omni], it [was] essential that [Wells] enter into this Agreement."[2]

12. Omni has paid Wells all amounts he was owed as a result of the Transaction.

13. Wells agreed in the Restrictive Covenant Agreement to comply with certain reasonable restrictions on (i) use and disclosure of Omni's trade secret or confidential and proprietary information, (ii) solicitation of certain Omni clients, customers, and employees, and (iii) competition with Omni's businesses in certain geographic areas for a limited time and during a limited period.[3]

14. Wells promised that he would not "use any Confidential Information or Trade Secrets or disclose any Confidential Information or Trade Secrets" (as those terms are defined in the Restrictive Covenant Agreement) of Millhouse or Omni to any person or entity.[4] The Restrictive Covenant Agreement provides that "Confidential Information" is defined as "any data or information of the Company Group (including trade secrets) that is valuable to the operation of the Buyer Group's business and not generally known to the public or competitors."[5] "Trade Secrets" is defined in the Restrictive Covenant Agreement as "information with respect to the conduct or details of the business conducted by the Company Group, including any technical or nontechnical data, formula, pattern, compilation, program, device, method,

---

[1] **Exhibit A**, Restrictive Covenant Agreement.
[2] *Id.* at pg. 1.
[3] *Id.*
[4] *Id.* at ¶ 1(b).
[5] *Id.* at ¶ 1(a).

technique, design, drawing, process, financial data, financial plan, product plan, list of actual or potential customers or suppliers or other information similar to any of the foregoing, which (i) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other Persons who can derive economic value from its disclosure or use and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[6]

15. Wells also agreed that for a period of five (5) years after the Closing Date, he would not engage in certain competitive activities, including by not:

> [D]irectly or by assisting others, conduct Company Activities in the Territory [as that term is defined in the Restrictive Covenant Agreement] or otherwise engage in, have an equity or profit interest in, loan money to or render services (of an executive, management, marketing, sales, research and development, business development, strategic planning, administrative, financial, or consulting nature) to or on behalf of any Person engaged in Company Activities in the Territory.[7]

16. Wells further promised that for a period of five (5) years after the Closing Date, he would refrain from soliciting certain customer and clients of Omni, including by not:

> [D]irectly or by assisting others, (1) solicit or attempt to solicit, any business from any [entity or individual] who was either a customer or an actively sought prospective customer of [Omni or Millhouse], in each case, as of the Closing Date or at any time during the one-year period prior to the Closing Date, or is a customer or an actively sought prospective customer of [Omni], for purposes of providing products or services that are competitive with the Company Activities, or (2) provide to any such customer or prospective customer products or services that are competitive with the Company Activities.[8]

17. Wells additionally promised that for a period of five (5) years after the Closing Date, he would refrain from soliciting certain employees of Omni or Millhouse, including by not:

> [D]irectly or by assisting others, hire, recruit or solicit or attempt to hire, recruit, or solicit, any person who was an employee of [Millhouse] on the Closing Date or

---

[6] *Id.* at ¶ 1(a).
[7] *Id.* at ¶ 1(c)(3).
[8] *Id.* at ¶ 1(c)(4)(A).

4

at any time during the one-year period prior to the Closing Date, or is an employee of [Omni] during the [five (5) year period following the Closing Date].[9]

18. Wells has violated and, upon information and belief, is violating his Restrictive Covenant Agreement as described below.

C. *Wells' Employment with Omni*

19. Upon the closing of the Transaction, Omni offered Wells the position of Sales Director of Millhouse, which Wells accepted.

20. As the Sales Director, Wells' responsibilities were far-reaching and touched every part of the sales process. In addition to setting strategy for Millhouse's sales process, Wells managed a sales team and was responsible for sales in the United States, Canada, and Mexico.

21. In connection with accepting the Sales Director position, Wells entered into a Confidentiality and Intellectual Property Agreement with Omni and Millhouse on August 24, 2021.[10]

22. Wells agreed in the Confidentiality and Intellectual Property Agreement that he would not disclose or use Omni's or Millhouse's confidential information. Specifically, he agreed to not:

> [D]isclose any Confidential Information [as that term is defined in the Confidentiality and Intellectual Property Agreement] to anyone outside of [Omni] and to use Confidential Information only as needed to perform [his] job at [Omni]. Further, without limiting any of [his] other obligations [in the Confidentiality and Intellectual Property Agreement], [he] specifically agree[d] not to disclose (whether orally or through electronic mail or otherwise) any information about [Omni's] … business plans.[11]

23. The Confidentiality and Intellectual Property Agreement defines Confidential Information as "non-public information from [Omni and Millhouse] and third parties with whom

---

[9] *Id.* at ¶ 1(c)(4)(B).
[10] **Exhibit B**, Confidentiality and Intellectual Property Agreement.
[11] *Id.* at ¶ 1.

5

[Omni and Millhouse] do[] business," and includes "company internal announcements and emails, inventions, marketing plans, product plans, product designs, prototypes, business strategies, financial information, forecasts, personnel information, contact information, and customer and supplier lists."[12]

24. Omni and Millhouse promised to, and in fact did, provide Wells with, among other things, trade secrets, confidential information, and proprietary information, including strategic business plans and practices; business, training, marketing, promotional and sales plans and practices; cost, rate and pricing structures; accounting and business methods; identities of, individual requirements of, specific contractual arrangements with, and information about, Millhouse's suppliers, distributors and customers and their confidential information; know-how; compilations of data and analyses; techniques; systems; formulae; research; records; reports; manuals; documentation; models; data and databases relating thereto; and the opportunity to develop further relationships with Millhouse and Omni customers.

25. Wells also promised that he would not "undertake any other employment or activities that would conflict with [his] work with [Omni and Millhouse], without first obtaining written permission…."[13]

26. Wells further agreed that during his employment and for a one (1) year period after, he would not "directly or indirectly solicit, induce, encourage, or attempt to solicit, induce, or encourage any employee or contractor of [Omni or Millhouse] to leave [Omni or Millhouse] for any reason."[14]

27. Wells has violated and, upon information and belief, is violating his Confidentiality and Intellectual Property Agreement as described below.

---

[12] *Id.*
[13] *Id.* at ¶ 3.
[14] *Id.* at ¶ 8.

### D. Wells Has Misappropriated Omni and Millhouse's Trade Secrets and Has Breached His Obligations Under the Agreements

28. Wells has misappropriated Omni and Millhouse's trade secrets and confidential and proprietary information. Moreover, he has broken promises he made in the Restrictive Covenant Agreement and Confidentiality and Intellectual Property Agreement (collectively, the "Agreements"), and has violated contractual and legal obligations he owed to Omni and Millhouse.

29. On June 22, 2023, Omni learned that Wells had business interests in a separate company and was engaging in providing freight forwarding and other logistics and transportation services for his own personal benefit.

30. On July 17, 2023, the then-President of Millhouse, Vadim Kirilin ("Kirilin"), had a meeting with Wells at the Millhouse office. During the meeting, Kirilin asked Wells whether he had his own company to provide freight forwarding and other logistics and transportation services. Wells initially denied that he had set up his own competing company to provide freight forwarding and other logistics and transportation services for his personal benefit. However, after further discussion, Wells indicated that he was an owner in an entity that provided services competitive with those provided by Omni and Millhouse.

31. Kirilin told Wells that his activities were in violation of his Agreements. Kirilin informed Wells that his employment with Omni was terminated effective immediately and that he was required to return the cellular phone he used for work, which was provided and paid for by Omni. The cellular phone contained Omni's and Millhouse's trade secrets and confidential and proprietary information, including customer contact information and communications, and was the primary method of communication used by Wells when communicating with customers.

7

However, Wells refused to return Omni's cellular phone and ultimately took it with him when he left the Millhouse office that day following termination of his employment.

32. While in the Millhouse office foyer, Wells made a phone call to his wife, Oksana Wells, who was also an employee of Omni. At the time Wells made the call, his wife was out of the office. Video and audio of this call were captured by a security camera in the office. During the call, Wells informed his wife that Omni was aware of "the business" and that their employment was being terminated.

33. Later that evening, an Omni employee, Daniel Radchishin, retrieved the cellular phone from Wells and delivered it to Kirilin. However, data belonging to Omni on the cellular phone had been erased, after the phone had been reset by Wells.

34. Following the termination of Wells' employment, Omni continued conducting an investigation into his conduct to determine if he had violated, or was currently violating, the obligations he owed to Omni and Millhouse.

35. Through its investigation, Omni has learned that Wells together with his wife, Oksana Wells, have at all relevant times had business interests in certain entities, including Expedite Express LLC, CTSX Blue Point Global Solutions LLC, and Truckload LLC. Wells has been identified as the CEO of Expedite Express LLC in filings made with the Florida Secretary of State. The filings indicate that the business of Expedite Express LLC is logistics and freight transportation.[15]

36. Omni has further learned that, while still employed as the Sales Director, Wells was disclosing Millhouse's and Omni's trade secret and confidential information for his own benefit. Specifically, on May 16, 2023, Wells forwarded insurance requirements and a

---

[15] **Exhibit C**, Florida Secretary of State Filings (Article III of which identifies the industry of Expedite Express LLC as "Logistics and Freight Transportation.").

confidential service agreement between Millhouse and one of its top customers to his email address that was associated with Expedite Express LLC, daniel@ee-freight.com, and attempted to forward a pricing template for a Millhouse customer to the same email.

37. Omni also received reports that its current and potential customers were contacted by Wells who solicited their business, including by contacting the key account contacts, and requesting that they send their business to him and/or the entities that he had business interests in to provide freight forwarding and other logistics and transportation services.

38. On July 28, 2023, Omni sent Wells a cease-and-desist letter requesting that he stop violating the obligations he owed to Omni under the Agreements and that he provide certain written assurances.

39. Thereafter, on August 7, 2023, Omni received a letter from Wells, dated August 3, 2023, wherein he claimed that he was "in process of closing out the companies in question."

40. However, on August 12, 2023, Omni learned that Wells had solicited one of its largest customers the previous day. Specifically, on August 11, 2023, Wells sent an email from his Expedite Express email address to a senior employee of the customer, of whom he was aware due to his work as Sales Director, stating:

> Here's our info. Please let me know when I can come up and visit. I'm free anytime. Look forward to hearing from you save my number.

Wells had attached a document to his email containing information for Expedite Express (of which he is identified as "Co-Founder"), including contact information, accounts receivable and accounts payable information, and motor carrier and U.S. Department of Transportation licensing numbers.

41. Thus, contrary to his claim in the August 7 letter to be "in process of closing out the companies in question," Wells continued to violate his obligations to Omni, through

9

solicitation of Omni and Millhouse customers and disclosure and/or use of Omni and Millhouse trade secrets and confidential and proprietary information.

42. Further, from August 2023 through May 2024, Wells provided services to Expedite Express in violation of the restrictive covenants in his Agreements. Upon information and belief, Wells disclosed and used Omni and Millhouse's trade secret and confidential and proprietary information, including confidential customer information, to provide those services.

## V. CAUSES OF ACTION

### COUNT 1
### VIOLATION OF THE DEFEND TRADE SECRETS ACT

43. Omni re-alleges and incorporates by reference the allegations set forth above.

44. Omni is the owner of certain trade secrets, but not limited to: business methods, techniques, processes, and lists of actual or potential customers or suppliers. Omni derives economic value from its trade secrets not being generally known to, or readily ascertainable by proper means by, other persons who can receive economic value from their disclosure. Particularly, Omni has (and Wells has misappropriated): key account contacts and customer lists, insurance requirements and confidential service agreements between Millhouse and customers, and pricing templates. Wells, on May 16, 2023, forwarded insurance requirements and a confidential service agreement between Millhouse and one of its top customers to his email address associated with Expedite Express, and attempted to forward a pricing template for a Millhouse customer to the same email. Wells also used Omni's customers lists, including the key account contacts, to contact entities to send their business to him. Further, On August 11, 2023, Wells sent an email from his Expedite Express email to a senior employee of a customer which he learned through Omni.

45. Omni's trade secrets and other confidential and propriety information are valuable and critical to Omni's business operations.

46. Wells knew or should have known of Omni's trade secrets, especially because the definition "Confidential Information" includes trade secrets.

47. Omni has taken reasonable steps to protect the trade secrets, including by:

- Employees are required to execute a Restrictive Covenant Agreement and a Confidentiality and Intellectual Property Agreement with non-disclosure provisions prior to employment;

- Employment agreements are strictly enforced by law for ex-employees;

- Omni buildings require employee key card access to enter; and

- All Omni data and document file access require Omni username and password access with defined security groups defined based on roles and information sensitivity level.

48. The trade secrets are not known or made available to the public, nor are they readily ascertainable through independent development.

49. The trade secrets derive independent value from not being generally known.

50. Omni provided Wells access to Omni's trade secrets and other confidential and proprietary information during his work for Omni for the limited purpose of furthering Omni's legitimate business interests.

51. Wells has misappropriated trade secrets without the express or implied consent or authority of Omni by, among other things, using its customer contact lists for his own (and his business's) personal benefit, forwarding confidential service agreements between Millhouse and its customers to his personal email, and forwarding confidential pricing templates to his personal

11

email. Specifically, Wells, on May 16, 2023, forwarded insurance requirements and a confidential service agreement between Millhouse and one of its top customers to his email address associated with Expedite Express, and attempted to forward a pricing template for a Millhouse customer to the same email. Wells also used Omni's customers lists, including the key account contacts, to contact entities to send their business to him. Further, On August 11, 2023, Wells sent an email from his Expedite Express email to a senior employee of a customer which he learned through Omni.

52. Omni has suffered and continues to suffer actual damages and irreparable harm as a direct result of Wells' misappropriation and use of Omni's trade secrets.

53. The trade secrets owned by Omni and now being used by Wells are used in or intended for use in interstate commerce. Indeed, Omni is a company providing multi-modal transportation, freight forwarding, customs brokerage, warehousing, distribution, and other value-added logistics services in North America, Asia, and Europe, and these industries inherently cross state lines.

54. As a direct and proximate cause of Wells' actions, Omni has been damaged, with the specific amount to be proven at trial.

55. Under 18 U.S.C. § 1836(b)(1), Omni has the right to recover damages for the actual loss caused by Wells' misappropriation of the trade secrets, damages for unjust enrichment caused by the misappropriation of the trade secret, or the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for Wells' use of the trade secrets.

56. Because Wells' misappropriation was willful and malicious, Omni may also recover exemplary damages under 18 U.S.C. § 1836(b)(3)(C).

WHEREFORE, Plaintiff Omni demands judgment in its favor and against Defendant Wells for misappropriation of Omni's trade secrets, and for damages arising from that misappropriation as permitted by 18 U.S.C. § 1836(b)(3)(B), including exemplary damages under 18 U.S.C. § 1836(b)(3)(C), and for all such other relief the Court deems just and proper.

## COUNT 2
## MISAPPROPRIATION OF TRADE SECRETS
## (VIOLATION OF N.C. GEN. STAT. §§ 66-152, ET SEQ.)

57. Omni re-alleges and incorporates by reference the allegations set forth above.

58. Omni is the owner of certain trade secrets, including but not limited to: business methods, techniques, processes, and lists of actual or potential customers or suppliers. Omni derives economic value from its trade secrets not being generally known to, or readily ascertainable by proper means by, other persons who can receive economic value from their disclosure. Particularly, Omni has (and Wells has misappropriated): key account contacts and customer lists, insurance requirements and confidential service agreements between Millhouse and customers, and pricing templates. Wells, on May 16, 2023, forwarded insurance requirements and a confidential service agreement between Millhouse and one of its top customers to his email address associated with Expedite Express LLC, and attempted to forward a pricing template for a Millhouse customer to the same email. Wells also used Omni's customers lists, including the key account contacts, to contact entities to send their business to him. Further, On August 11, 2023, Wells sent an email from his Expedite Express email to a senior employee of a customer which he learned through Omni.

59. Omni's trade secrets and other confidential and propriety information are valuable and critical to Omni's business operations.

60. Wells knew or should have known of Omni's trade secrets, especially because the definition "Confidential Information" includes trade secrets.

13

61. Omni has taken reasonable steps to protect the trade secrets, including by:

- Employees are required to execute a Restrictive Covenant Agreement and a Confidentiality and Intellectual Property Agreement with non-disclosure provisions prior to employment;
- Employment agreements are strictly enforced by law for ex-employees;
- Omni buildings require employee key card access to enter; and
- All Omni data and document file access require Omni username and password access with defined security groups defined based on roles and information sensitivity level.

62. The trade secrets are not known or made available to the public, nor are they readily ascertainable through independent development.

63. The trade secrets derive independent value from not being generally known.

64. Omni provided Wells access to Omni's trade secrets and other confidential and proprietary information during his work for Omni for the limited purpose of furthering Omni's legitimate business interests.

65. Wells has used Omni's trade secrets and confidential and proprietary information on his behalf or others to provide competing services, which have caused damage to Omni.

66. Pursuant to N.C. Gen. Stat. § 66-153, "the owner of a trade secret shall have remedy by civil action for misappropriation of his trade secret."

67. Omni has suffered and continues to suffer actual damages and irreparable harm as a direct result of Wells' misappropriation and use of Omni's trade secrets.

68. Under N.C. Gen. Stat. § 66-154(b), Omni is entitled to recover actual damages, measured by the economic loss or the unjust enrichment caused by the misappropriation of a trade secret, whichever is greater.

69. Because Wells' misappropriation was willful and malicious, Omni may also recover punitive damages and attorney's fees under N.C. Gen. Stat. § 66-154(c)-(d).

70. As a direct and proximate result of Wells' misappropriations, Omni has suffered, and will continue to suffer, substantial loss and damages.

WHEREFORE, Plaintiff Omni demands judgment in its favor and against Defendant Wells for misappropriation of Omni's trade secrets and damages arising from that misappropriation as permitted by N.C. Gen. Stat. § 66-154(b), including punitive damages and reasonable attorney's fees, and as all such other relief the Court deems just and proper.

## COUNT 3
## BREACH OF CONTRACT

71. Omni re-alleges and incorporates by reference the allegations set forth above.

72. Wells entered into and agreed to the Agreements as more particularly described above.

73. The Agreements are valid and existing agreements between Omni and Wells.

74. Omni has performed or tendered performance of its contractual obligations under the terms of the Agreements.

75. Wells received good and valuable consideration, which included Omni paying him a retention bonus, providing him the right to receive a portion of any earn-out consideration, and providing him with trade secrets, confidential information, and proprietary information.

76. In exchange for this consideration, Wells agreed to several restrictive covenants, including non-disclosure, non-competition, and non-solicitation obligations.

77. Wells has breached his non-disclosure, non-competition, and non-solicitation obligations.

78. All conditions precedent have been performed or have occurred.

79. Through his breaches, Wells has proximately caused harm to Omni.

80. Omni is entitled to damages caused by Wells' breaches in an amount to be determined at trial.

WHEREFORE, Plaintiff Omni demands judgment in its favor and against Defendant Wells for breaches of the Agreements, for his actual and consequential damages arising from those breaches, and for all such other relief the Court deems just and proper.

## COUNT 4
## BREACH OF FIDUCIARY DUTY

81. Omni re-alleges and incorporates by reference the allegations set forth above.

82. Wells owes Omni fiduciary duties, which includes duties of good faith, fair dealing, and loyalty, as a former employee. In his role of Sales Director at Omni, for which he was specifically retained to perform, he held a key position of special confidence and trust. Wells was required to act solely for the benefit of Omni in all matters connected with his work. Wells managed a sales team and was responsible for sales in the United States, Canada, and Mexico. Wells' position as head of sales was a sufficiently senior position within Omni. Wells agreed in his offer letter to serve Omni in the capacity indicated and to use his best efforts in devoting his time, attention, and skill to the advancement of Omni's interests. Wells also set the strategy for Millhouse's sales process and oversaw more than 100 customer accounts at all relevant times.

83. Former employees may not use trade secrets or confidential and proprietary information that they acquired during their employment in a manner adverse to the former employer.

84. This obligation survives termination of employment.

85. Former employees cannot misappropriate their former employer's trade secrets and confidential and proprietary information.

86. Wells breached his fiduciary duty owed to Omni in both (i) misappropriating trade secrets as described herein, and (ii) unlawfully competing with Omni directly in its line of business by having his own competing companies. Wells breached his fiduciary duties by not acting in good faith and with due regard for Omni's interests by using his position of trust and confidence at the detriment of Omni.

87. Wells' breaches caused Omni injury and benefitted Wells.

88. Omni seeks relief, including disgorgement of Wells' compensation he received and the revenue or profits he received while in breach of his obligations, as well as any benefit he received while he continued to be in violation of his fiduciary duties owed to Omni.

WHEREFORE, Plaintiff Omni demands judgment in its favor and against Defendant Wells for breach of fiduciary duty, and for damages arising from that breach, including disgorgement of Wells' compensation and/or profits he received as a result of that breach, and for all such other relief the Court deems just and proper.

## COUNT 5
## UNJUST ENRICHMENT

89. Omni re-alleges and incorporates by reference the allegations set forth above.

90. Omni asserts this unjust enrichment claim in the alternative to its breach of contract claim in Count III.

91. Omni conferred measurable benefits on Wells by permitting Wells to access intellectual property and trade secrets and providing Wells with other proprietary information.

92. Omni did not confer these benefits to Wells officiously or gratuitously.

17

93. Wells accepted this benefit by (i) making sales and developing further relationships with customers, and (ii) accepting a transaction bonus amount and an earn-out amount.

94. Wells was unjustly enriched because Omni gave him money (including the acceptance of a transaction bonus amount, an earn-out amount, and his salary) in order for him to use confidential information to further Omni's relationships with its customers. If Wells used this information for any other reason than to further Omni's business or relationship with customers, then Wells was unjustly enriched. When Wells was not acting for the benefit of Omni, and was using information he received from Omni, he was unjustly enriched.

95. Omni is entitled to damages from Wells equivalent to the reasonable value of the benefits conferred. Any income or revenue Wells received and all those acting in concert with him as a result of Wells' wrongful conduct should be placed in a constructive trust and paid to Omni. This includes but is not limited to any income or revenue Wells received via his involvement with Expedite Express LLC, CTSX Blue Point Global Solutions LLC, and/or Truckload LLC.

WHEREFORE, Plaintiff Omni demands judgment in its favor and against Defendant Wells, and damages equivalent to the reasonable value of the benefits Omni conferred to Wells, and for all such other relief the Court deems just and proper.

## VI. JURY TRIAL DEMANDED

96. Omni demands a trial by jury on all issues so triable.

*[Signatures on following page]*

s/Nikole Setzler Mergo
Nikole Setzler Mergo (Federal ID No. 7410)
(NC State Bar No. 27292)
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 540-2042
NMergo@maynardnexsen.com


Joseph M. Graham Jr. (*pro hac vice application forthcoming*)
NORTON ROSE FULBRIGHT US LLP
1301 McKinney St., Suite 5100
Houston, TX 77010
Telephone: (713) 651-8214
Facsimile: (713) 651-5246
joseph.graham@nortonrosefulbright.com

Josh Owings (*pro hac vice application forthcoming*)
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
josh.owings@nortonrosefulbright.com

Kira Latham
NC State Bar No. 56523
kira.latham@nortonrosefulbright.com


**ATTORNEYS FOR PLAINTIFF OMNI LOGISTICS, LLC**

March 28, 2025