IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-23-MR-WCM

| | |
|---|---|
| OMNI LOGISTICS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| DANIEL WELLS, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant's Motion to Dismiss Amended Complaint (the "Motion to Dismiss," Doc. 11), which has been referred to the undersigned for the entry of a recommendation pursuant to 28 U.S.C. § 636.

I. Procedural History

On January 24, 2025, Omni Logistics, LLC ("Plaintiff") filed its Complaint against Daniel Wells ("Defendant"). Doc. 2.

On March 28, 2025, Plaintiff filed an Amended Complaint. Doc. 9.

On April 18, 2025, Defendant filed the Motion to Dismiss and a supporting memorandum. Docs. 11, 12. Plaintiff has responded (Doc. 17), and the time for Defendant to file a reply has passed.

1

## II. Plaintiff's Allegations in the Amended Complaint

Plaintiff is a "third-party logistics company" that provides a variety of "transportation, freight forwarding, customs brokerage, warehousing, distribution, and other value-added logistics services in North America, South America, Asia, and Europe." Doc. 9 at ¶ 7.

In August 2021, Plaintiff acquired most of the assets of Millhouse Logistics, Inc. ("Millhouse"), including its trade secrets and proprietary information, which resulted in Plaintiff becoming the parent company of two new Millhouse entities. Id. at ¶ 8. "As a key employee, Defendant received separate consideration" in connection with the August 2021 transaction and was required to enter into a Restrictive Covenant Agreement (the "RCA"). Id. at ¶¶ 9-10.

The RCA placed restrictions on Defendant's use of Plaintiff's trade secrets and confidential information; solicitation of Plaintiff's customers, clients, and employees; and ability to compete with Plaintiff's businesses in certain geographic areas for a specified period of time. Id. at ¶ 13.

After executing the RCA, Defendant became the Sales Director for the new Millhouse entities. As such, he "touched every part of the sales process," was required to set sales strategies, and was in charge of a sales team for sales in the United States, Canada, and Mexico. Doc. 9 at ¶¶ 19- 20. In connection with this position, Defendant entered into a Confidentiality and Intellectual

2

Property Agreement (the "Confidentiality Agreement") with Plaintiff, which imposed restrictions upon Defendant's use of Plaintiff's confidential information. Id. at ¶¶ 21-22.[1]

On June 22, 2023, Plaintiff learned that Defendant "had business interests in a separate company and was engaging in providing freight forwarding and other logistics and transportation services for his own personal benefit." Id. at ¶ 29.

On July 17, 2023, Millhouse's then-president, Vadim Kirilin ("Kirilin") met with Defendant and asked Defendant if Defendant had his own company that provided freight forwarding and other logistics services. Id. at ¶ 30. Defendant "initially denied that he had set up his own competing company to provide freight forwarding and other logistics and transportation services for his personal benefit. However, after further discussion, [Defendant] indicated that he was an owner in an entity that provided services competitive with those provided by [Plaintiff] and Millhouse." Id. Kirilin immediately terminated Defendant's employment and requested that Defendant return a cellular phone that Plaintiff had provided to Defendant for work purposes and which Plaintiff alleges contained its "trade secrets and confidential and proprietary information, including customer contact information and communications…."

---

[1] Plaintiff refers to the RCA and the Confidentiality Agreement collectively as the "Agreements." Doc. 9 at ¶ 28.

Id. at ¶ 31. Defendant refused to return the cellular phone at the time of his termination; however, when the phone was collected later that evening, "data belonging to [Plaintiff] on the cellular phone had been erased, after the phone had been reset by [Defendant]." Id. at ¶¶ 31, 33.

Plaintiff conducted an investigation and learned that Defendant, along with Defendant's wife (who is also Plaintiff's former employee) had "business interests" in certain entities, including an entity known as "Expedite Express LLC" ("Expedite Express"). Id. at ¶ 35. Business filings for Expedite Express indicate that its business is logistics and freight transportation. Id. Plaintiff also discovered that prior to Defendant's termination, Defendant had "forwarded insurance requirements and a confidential service agreement between Millhouse and one of its top customers to his email address that was associated with Expedite Express LLC…and attempted to forward a pricing template for a Millhouse customer to the same email." Id. at ¶ 36. Additionally, Plaintiff "received reports that its current and potential customers were contacted by [Defendant] who solicited their business, including by contacting the key account contacts, and requesting that they send their business to him and/or the entities that he had business interests in to provide freight forwarding and other logistics and transportation services." Id. at ¶ 37.

On July 28, 2023, Plaintiff sent Defendant a cease-and-desist letter. On August 3, 2023, Defendant responded that he was "in process of closing out the

4

companies in question." Id. at ¶¶ 38-39. However, Plaintiff subsequently learned that on August 11, 2023, Defendant sent an email from his Expedite Express email address to a senior employee of one of Plaintiff's largest customers attaching information for Expedite Express, including "contact information, accounts receivable and accounts payable information, and motor carrier and U.S. Department of Transportation licensing numbers." Id. at ¶ 40. Defendant continued to provide services through Expedite Express in violation of the restrictive covenants in the Agreements through May 2024. Id. at ¶ 42.

### III. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when

5

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim "from conceivable to plausible." Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## IV. Discussion

Plaintiff asserts claims for violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (the "DTSA"), the North Carolina Trade Secret Protection Act, N.C. Gen. Stat. § 66-152, *et. seq.* (the "NCTSPA"), breach of contract, breach of fiduciary duty, and unjust enrichment.

### A. Trade Secret Claims

To make out a prima facie claim for a violation of either the DTSA or the NCTSPA, a plaintiff must identify the trade secret at issue with sufficient particularity. See Sysco Machinery Corp. v. DCS USA Corp., 143 F.4th 222, 228 (4th Cir. 2025) ("The federal and North Carolina statutes are similar in another way: both require the plaintiff to identify 'with sufficient particularity' the trade secret it claims has been misappropriated. At the pleading stage, identifying the trade secret with sufficient particularity means describing the trade secret at a level of detail that enables 'a defendant to delineate that which he is accused of misappropriating,' and that enables a court to determine

6

whether the plaintiff has plausibly satisfied the reasonable secrecy and independent economic value requirements.") (internal citations omitted); see also Krawiec v. Manly, 370 N.C. 602, 609 (2018) (quoting Washburn v. Yadkin Valley Bank & Tr. Co., 190 N.C. App. 315, 326 (2008) (quoting VisionAIR, Inc. v. James, 167 N.C. App. 504, 510-11 (2004)), disc. rev. denied, 363 N.C. 139 (2009)); Design Gaps, Inc. v. Hall, No. 3:23-CV-186-MOC, 2023 WL 8103156, at *8 n.3 (W.D.N.C. Nov. 21, 2023) ("Due to the similar standards of the North Carolina Trade Secrets Protection Act and DTSA, courts confronted with both claims regularly analyze them simultaneously.").

Here, Defendant argues that Plaintiff has failed to identify the trade secrets at issue with sufficient particularity.

Courts will dismiss misappropriation of trade secrets claims at the pleadings stage when such claims are based on only vague or conclusory allegations regarding the trade secrets at issue. See Washburn, 190 N.C. App. at 327 ("[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is 'insufficient to state a claim for misappropriation of trade secrets.'") (quoting VisionAIR, 167 N.C. App. at 511); Design Gaps, 2023 WL 8103156, at *8 (explaining that "[c]ourts routinely dismiss misappropriation of trade secret claims based on vague and conclusory allegations at the pleadings stage" and that "when asserting a claim under the

7

DTSA, a plaintiff may not simply list categories of alleged trade secrets in broad terms….") (citations omitted).

In its Amended Complaint, Plaintiff alleges that it

> is the owner of certain trade secrets, [including] but not limited to: business methods, techniques, processes, and lists of actual or potential customers or suppliers. [Plaintiff] derives economic value from its trade secrets not being generally known to, or readily ascertainable by proper means by, other persons who can receive economic value from their disclosure. Particularly, [Plaintiff] has (and [Defendant] has misappropriated): key account contacts and customer lists, insurance requirements and confidential service agreements between Millhouse and customers, and pricing templates. [Defendant], on May 16, 2023, forwarded insurance requirements and a confidential service agreement between Millhouse and one of its top customers to his email address associated with Expedite Express, and attempted to forward a pricing template for a Millhouse customer to the same email. [Defendant] also used [Plaintiff's] customers lists, including the key account contacts, to contact entities to send their business to him. Further, On August 11, 2023, [Defendant] sent an email from his Expedite Express email to a senior employee of a customer which he learned through [Plaintiff].

Doc. 9 at ¶44; see also Doc. 9 at ¶ 58.

Reading these allegations in the light most favorable to Plaintiff, the undersigned is persuaded that Plaintiff has identified the trade secrets at issue with the requisite specificity. See Recon Grp. LLP v. Lowe's Home Centers, LLC, 743 F. Supp.3d 737, 750 (W.D.N.C. 2024) ("Here, goTRG provided enough details beyond just a broad category, like a 'strategy' or 'process,' for Lowe's to

8

determine what it is accused of misappropriating. Therefore, goTRG has pled trade secrets with sufficient particularity at this stage. Further details that Lowe's seeks can be obtained through discovery."); Sysco Machinery, 143 F.4th at 228 ("At the pleading stage, identifying the trade secret with sufficient particularity means describing the trade secret at a level of detail that enables 'a defendant to delineate that which he is accused of misappropriating' and enables a court to determine whether the plaintiff has plausibly satisfied the reasonable secrecy and independent economic value requirements.") (quoting Krawiec, 370 N.C. at 609) (citing Synopsys, Inc. v. Risk Based Security, Inc., 70 F.4th 759, 772-73 (4th Cir. 2023)); cf. Design Gaps, 2023 WL 8103156, at *9 (dismissing a DTSA claim based on alleged misappropriation of plaintiff's "collection of copyrights in certain works, trade secrets, and other proprietary information that are not lawfully available to the public that are used in the design and construction of such residential projects") (collecting cases including Washburn, 190 N.C. App. at 327 (holding that defendant failed to identify the trade secrets with sufficient specificity when it described the trade secrets as "acquired knowledge of [Defendant's] business methods; clients, their specific requirements and needs; and other confidential information pertaining to [Defendant's] business") and Power Home Solar, LLC v. Sigora Solar, LLC, No. 20-CVS-7165, 2021 WL 2530984, at *13 (N.C. Super. Ct. June 18, 2021) (dismissing Plaintiff's claims for violations of NCTSPA and DTSA

9

based on Plaintiff's insufficient description of its trade secrets as "proprietary practices, methods, techniques, pricing models," and "information concerning [Plaintiff's] suppliers and vendors")).

### B. Breach of Contract

In its Amended Complaint, Plaintiff alleges that Defendant has breached both the RCA and Confidentiality Agreement. In the Motion to Dismiss, however, Defendant does not appear to challenge Plaintiff's breach of contract claim to the extent that claim is premised on breach of the Confidentiality Agreement. With respect to the RCA, Defendant argues that North Carolina law governs the interpretation of that agreement and that the RCA is unenforceable under North Carolina law. Doc. 12 at 10.

#### 1. Choice of Law

The RCA provides that:

> This Agreement shall be governed by and construed and enforced in accordance with laws of the State of Delaware (regardless of the Laws that might otherwise govern under applicable principles of conflicts of laws thereof) as to all matters, including matters of validity, construction, effect, performance and remedies.

Doc. 9-1 at § 2(a).

Defendant contends that despite this Delaware choice of law provision, this Court should apply North Carolina law when determining the enforceability of the RCA.

10

"[I]t is apparent that when a choice of law provision is included in a contract, the parties intend to make an exception to the presumptive rule that the contract is governed by the law of the place where it is made." Bueltel v. Lumber Mut. Ins. Co., 134 N.C. App. 626, 631 (1999)). Accordingly, "contracting parties in North Carolina are entitled to agree that a particular jurisdiction's substantive law will govern their contract, and such a provision will generally be given effect." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 602 (4th Cir. 2004).

However, North Carolina courts will not honor a choice of law provision where

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and . . . would be the state of applicable law in the absence of an effective choice of law by the parties.
>
> Cable Tel Servs., Inc. v. Overland Contracting, Inc., 154 N.C. App. 639, 642-43 (2002) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971)).

Here, the RCA reflects that Plaintiff itself and several other companies involved in the August 2021 asset purchase are Delaware limited liability companies. Further, Plaintiff is attempting to protect alleged trade secrets and

proprietary information that it obtained in connection with that asset purchase. Doc. 9-1 at 1; see also Doc. 9 at ¶ 2. Under these circumstances, the undersigned is persuaded that there is a sufficient connection between Delaware and the RCA to support the application of Delaware law to that agreement. Accord IQVIA, Inc. v. Circuit Clinical Solutions, Inc., 22-CVS-7425, 2023 WL 129439, *3 (N.C. Sup. Ct. Jan. 6, 2023) ("There is no dispute that Delaware—IQVIA's place of incorporation—has a substantial relationship to the parties."); Exencial Wealth Advisors, LLC v. Downing, No. 24CV036078-590, 2025 WL 987747, at *3 (N.C. Super. Apr. 1, 2025) ("As Oklahoma has a substantial relationship to the parties—Plaintiff is an Oklahoma limited liability corporation headquartered in Oklahoma City … this Court will apply Oklahoma law to Plaintiff's claims for breach of contract.").[2]

### 2. Enforceability of the RCA

Defendant argues that, under North Carolina law, the RCA is not reasonable as to time and territory. See Doc. 12 at 10-14. Defendant does not, however, argue that the RCA is unenforceable under *Delaware* law.

Because the undersigned concludes that the Delaware choice of law provision in the RCA should be honored, and because Defendant has not argued the RCA is unenforceable under Delaware law, the undersigned does

---

[2] Defendant does not argue that application of Delaware law to the RCA would be contrary to a fundamental policy of North Carolina.

not reach Defendant's argument that certain provisions of the RCA are unenforceable under North Carolina law.

### C. Breach of Fiduciary Duty

A breach of fiduciary duty claim requires there to be a fiduciary relationship between the parties. Dalton v. Camp, 353 N.C. 647, 651 (2001). Although "parties to a contract…generally do not become each other's fiduciaries…," Dreamstreet Invs. v. MidCountry Bank, 842 F.3d 825, 831 (4th Cir. 2016), North Carolina courts have held that an "agent is a fiduciary with respect to matters within the scope of his agency." Honeycutt v. Farmers & Merchants Bank, 126 N.C. App. 816, 820 (1997) (citing SNML Corp. v. Bank, 41 N.C. App. 28, disc. review denied, 298 N.C. 204 (1979)).

Here, Plaintiff alleges that Defendant was a Sales Director, that he "managed a sales team and was responsible for sales in the United States, Canada, and Mexico," and that he "set the strategy for Millhouse's sales process and oversaw more than 100 customer accounts at all relevant times." Doc. 9 at ¶ 82. Plaintiff also alleges that Defendant's "responsibilities were far-reaching and touched every part of the sales process." Id. at ¶ 20.

At the pleading stage, these allegations are sufficient to indicate that a fiduciary relationship existed. See Sara Lee Corp. v. Carter, 129 N.C. App. 464, 470 (1998), rev'd on other grounds, 351 N.C. 27 (1999) (concluding that the defendant breached a fiduciary duty he owed to the plaintiff by acting in his

13

capacity as an agent to whom the defendant gave "discretion to obtain computer parts and services 'from whatever source he thought best'"); Global Textile Alliance, Inc. v. TDI Worldwide, LLC, No. 17-CVS-7304, 2018 WL 6272929, at *6-7 (N.C. Super. Ct. Nov. 29, 2018) (concluding that the plaintiff's allegations surrounding a breach of fiduciary duty claim were sufficient to survive a motion to dismiss where plaintiff alleged the defendant "oversaw all of Plaintiff's business within the Asia market and had vast control over Plaintiff's Asia operation").

### D. Unjust Enrichment

"To establish unjust enrichment, a party must show '(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously.'" Megaro v. McCollum, 66 F.4th 151, 161 (4th Cir. 2023) (quoting Primerica Life Ins. Co. v. James Massengill & Sons Const. Co., 211 N.C. App. 252, 259-60 (2011)).

Here, Defendant argues that Plaintiff's claim for unjust enrichment should be dismissed because Plaintiff has failed to allege that a measurable benefit was conferred upon Defendant.

Plaintiff alleges that it permitted Defendant "to access intellectual property and trade secrets" and that it did so "in order for [Defendant] to use confidential information to further [Plaintiff's] relationships with its

14

customers." Doc. 9 at ¶¶ 91, 94. The undersigned finds these allegations to be sufficient at the pleading stage. See Recon Grp. LLP v. Lowe's Home Centers, LLC, 743 F. Supp.3d 737, 751 (W.D.N.C. 2024) ("The Court, however, finds that [the plaintiff] has adequately pled its claim for unjust enrichment. [The plaintiff] has alleged that it allowed Lowe's to use its proprietary information under their agreements, Lowe's actually used the Software to manage its reverse logistics processes, and, after terminating the contract, Lowe's allegedly continued to use [the plaintiff's] Software and proprietary information without paying the agreed upon licensing fee."); PDF Electric & Supply Company, LLC v. Jacobsen, No. 20-CVS-4609, 2020 WL 5415220, at *11 (N.C. Super. Ct. Sept. 9, 2020) ("Plaintiffs also allege that [a specific plaintiff] 'conferred' the benefit of providing Jacobsen with access to Plaintiffs' confidential information 'for the express purpose of Jacobsen performing' his job duties, and not for Defendants' use to develop competing businesses. Plaintiffs allege that 'it is neither fair nor equitable for Defendants to make use of [a specific plaintiff's] confidential information.' While these allegations are a weak recitation of a claim for unjust enrichment, the Court concludes that they are minimally sufficient to preclude dismissal at this point in the case.") (internal citations omitted).

## V. Recommendation

For the reasons set out herein, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiff's Motion to Dismiss Amended Complaint (Doc. 11) be **DENIED**.

Signed: December 19, 2025

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).